# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 11-83991-JAC |
| CALVIN J. CHAPMAN, ) | CHAPTER 7 CASE |
| ) | |
| Debtor. ) | |

| | |
|---|---|
| ) | |
| HELENA CHEMICAL COMPANY & ) | |
| MONSANTO COMPANY ) | |
| CORPORATION, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | A.P. No.: 12-80002 |
| ) | |
| CALVIN J. CHAPMAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

This adversary proceeding is now on submission pursuant to the cross-motions for summary judgment of Plaintiff (Doc. 39) and the Debtor (Doc. 37). This proceeding involves Plaintiff Monsanto Company Corporation ("Monsanto") and Helena Chemical Company's ("Helena") complaint to have debts owed them by the Debtor excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), as a debt that was incurred as a result of false pretenses, false representation, or actual fraud. Oral arguments on these motions were heard in open court on September 24, 2012. Upon consideration of the dispositive motions, supporting evidence, and briefs of the parties, this Court finds that Helena's claim of $317,664.06 and Monsanto's claim of $33,921.15 are each nondischargeable.

1

## FACTS

Prior to filing a petition for relief under Chapter 7 of the Bankruptcy Code on November 17, 2011, Debtor was engaged in a commercial farming operation. In the furtherance of this farming operation, Debtor required certain agricultural chemicals, seed, and other goods, used to raise a crop. Plaintiffs Helena and Monsanto each provide agricultural goods to farmers, often on credit.

### A.     The Monsanto Credit.

On July 9, 2007, a 2007 Monsanto Technology/Stewardship Agreement was presented to Monsanto, purporting to bear the signature of Joseph C. Chapman. (Doc. 39-3). Joseph C. Chapman is the Debtor's father. (Doc. 39-7 at 7). [1] After receiving this document, Monsanto searched Joseph C. Chapman's credit profile, and extended credit based upon this examination. (Doc. 39-2). Later, Monsanto also relied on the authenticity of Joseph C. Chapman's signatures on a January 7, 2008 FarmFlex Interest Free Seed Financing Application, and a 2008 FarmFlex Customer Loan Agreement in extending credit that ultimately benefited the Debtor's farming operations. (Doc. 39-3) (Doc. 39-2). Monsanto filed an uncontested proof of claim establishing the amount of its indebtedness under these notes as being $33,921.15. (*See* Claim 8-1).[2]

---

[1] Doc. 39-7 is a condensed copy of deposition testimony given by the Debtor on August 17, 2012. References to page numbers in this transcript will be to the deposition page, rather than the exhibit page.

[2] Debtor's Motion for Summary Judgment (Doc. 35) contests the amount of the Plaintiff's claims that may be excepted from discharge. As no objection to the amount of the claim was timely filed, the Debtor's Motion for Summary Judgment is not the appropriate vehicle for the Court to consider Debtor's argument. A proof of claim properly executed and filed is *prima facie* evidence of the validity and amount of a creditor's claim. Fed. R. Bankr. P. 3001(f).

Steven G. Drexler, Plaintiffs' questioned document expert reviewed the 2007 Monsanto Technology Stewardship Agreement, the 2008 FarmFlex Seed Financing Statement, and the 2008 FarmFlex Loan Agreement, and determined that the signatures purporting to be those of Joseph C. Chapman were not authentic when compared to Joseph C. Chapman's known handwriting exemplars. (Doc. 39-6). Mr. Drexler further opined that the signatures appearing on these Monsanto documents were consistent with the Debtor's known handwriting exemplars, leading him to the conclusion that Joseph C. Chapman's signature on the Monsanto Credit Documents at issue were, in fact, signed by the Debtor. Debtor has provided no substantial evidence to contradict Mr. Drexler's conclusions.

### B. The Helena Credit.

Though Helena had a prior business relationship with the Debtor, Helena's agent, Matt Calame, informed Debtor in early 2009 that any agricultural financing for the 2009 crop year would have to be extended under Joseph C. Chapman's credit only, rather than the Debtor's. (Doc. 39-4) (Doc. 39-1) (Doc. 39-7 at 15). On January 16, 2009, Helena's credit manager, Gary Yochum, received an "Extended/Future Terms Request," which purported to be signed by the Debtor's father, Joseph C. Chapman. (Doc. 39-5) (Doc. 39-4). This request asked for the extension of a total of $350,000.00 to cultivate a wheat, corn, and soybean crop. (Doc. 34-5). Based upon Joseph C. Chapman's acceptable credit profile, this request was approved on January 22, 2009, with the understanding that the transaction would be documented with two separate promissory notes totaling $350,000.00, once they could drafted by Helena's attorney. (Doc. 39-4). Plaintiffs' questioned document expert concluded that the "Joseph C. Chapman" signature appearing on the January 16, 2009 credit request was not authentic, and was most

3

likely written by the Debtor. (Doc. 39-6). Again, this conclusion was not disputed by the Debtor.

The Helena credit extension on January 22, 2009 immediately authorized purchases of agricultural goods and chemicals to be made against this credit line. According to the testimony of Gary Yochum, it is not unusual for a customer to be presented with transactional paperwork months after the credit is approved. (Doc. 39-4). In such cases, Helena does not prevent customers from immediately accessing the credit, as it is important for customers to have timely access to chemicals, so the chemicals may be applied at the appropriate time during the crop growth cycle. (Doc. 39-4). The Debtor, in fact, began making immediate use of the credit authorized by Helena, making his first purchases on January 23, 2012, the day after Yochum testified he approved the credit request. (Doc. 37, Exhibit B) (Doc. 39-4).

On or around June 15, 2009, the Debtor was presented with two promissory notes evidencing the transaction. (Doc. 39-9). Calame then forwarded these documents to Helena's corporate offices in Collierville, Tennessee. (Doc. 39-1). In his testimony at his § 341 Creditors' Meeting, the Debtor admitted that he forged his father's signature to these notes, though the circumstances surrounding the execution of these notes are in dispute. (Doc. 39-10). Helena filed an uncontested proof of claim asserting that the debt owed Helena, as of the date of the Debtor's bankruptcy petition, totaled $317,664.06. (*See* Claim 7-1).

### C. Disputed Factual Issues.

While the unauthorized application for and execution of credit documents in his father's name are not in dispute, there remain two significant factual conflicts concerning how the inauthentic Helena credit documents came to be. Debtor contends that Helena's field agent, Matt Calame, suggested that the Debtor forge Joseph C. Chapman's signature to the promissory notes

4

after Debtor informed Calame that his father would not sign them. (Doc. 39-7 at 14-16). Calame denies that he ever told the Debtor it was acceptable for him to sign Joseph C. Chapman's name on any document. (Doc. 39-1).

The second important factual conflict involves the execution of the Helena promissory notes. Calame testified that he delivered the unexecuted promissory notes to the Debtor, instructing him to have Joseph C. Chapman sign the notes and return them to Helena's Tanner, Alabama facility. (Doc. 39-1). Andrea Dowling, Helena's office clerk, testified that on June 15, 2009, the Debtor came to the Tanner, Alabama facility to deliver the notes. (Doc. 39-8). Dowling claims that when the Debtor arrived, the notes were already executed. (Doc. 39-8). Dowling admits that she made a mistake in notarizing the documents without verifying the authenticity of the signatures on the documents. (Doc. 39-8). For his part, the Debtor testified that the promissory notes were unexecuted and waiting for him at the Tanner facility. (Doc. 39-7 at 23-24). The Debtor testified that Andrea Dowling witnessed him signing his father's name to the documents, and, regardless, agreed to notarize the notes anyway. (Doc. 39-7 at 23-24).

Both of these factual disputes concern the Debtor's interaction with various Helena agents at the local level. The Debtor did not believe that Matt Calame had authority to authorize the credit he requested. (Doc. 39-7 at 21). Moreover, Plaintiffs have provided undisputed evidence that Helena and Monsanto's decisions to act on the credit requests and accompanying documentation presented to them by Debtor were made in Collierville, Tennessee, and St. Louis, Missouri, respectively. (Doc. 39-2) (Doc. 39-4). Debtor has presented no evidence that the credit managers at either Helena or Monsanto had any actual knowledge of either Calame's alleged collusion or Dowland's notorial errors. As discussed below, these factual conflicts are

5

not material to the legal issues under submission, and do not prevent summary disposition of the instant adversary proceeding.

## *DISCUSSION*

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] Summary judgment is appropriate when the court determines that the moving party is entitled to judgment as a matter of law while viewing the evidence in a light most favorable to the non-moving party.[4] The party moving for summary judgment bears the burden of establishing the absence of a genuine issue of material fact.[5] Once the movant establishes a *prima facie* showing of entitlement to summary judgment as a matter of law, the non-movant must demonstrate that there is a genuine issue of material fact for trial.[6] Where both parties seek summary judgment, the Court must consider each motion independently and apply the applicable standards to each motion to determine whether summary judgment is appropriate under either motion.[7]

The Plaintiff's claim that the Debtor should not receive a discharge with respect to either of their debts, as the credit comprising the debts were extended to the Debtor on the basis of the Debtor's false representation or actual fraud.[8] Specifically, the Plaintiffs claim that by forging

---

[3] Fed. R. Civ. P. 56(c).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[5] *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

[6] *Id.* at 324, 106 S.Ct. 2548.

[7] *In re Envirodyne Indus., Inc.*, 176 B.R. 825 (Bankr.N.D. Ill.1995).

[8] 11 U.S.C. § 523(a)(2)(A) (2010).

6

the Monsanto and Helena credit documents, the Debtor falsely represented that the credit of Joseph C. Chapman supported the extension of credit. What constitutes "actual fraud" is determined by reference to the common law.[9] Thus, the elements of proof required to sustain a complaint for non-dischargeability under §523(a)(2)(A) are: (1) a false statement; (2) made with the purpose and intention of deceiving the creditor; (3) on which the creditor justifiably relied; which (4) caused the creditor to sustain damage.[10] By previous order, the Court determined that the only elements of the dischargeability analysis in dispute are whether the Debtor intended to deceive Plaintiffs in forging his father's signature, and whether the Plaintiffs justifiably relied on the forged documents at issue in extending the credit. (Doc. 18 at 5-6).

### A. Debtor's Fraudulent Intent.

Debtor applied for the Helena credit in his father's name alone. (Doc. 39-5). Likewise, the Monsanto credit was requested solely in the name of Joseph C. Chapman. (Doc. 39-3). The signatures appearing on the Monsanto Loan Agreement, the Helena Extended/Future Terms Request, and later the Helena promissory notes were forgeries made by the Debtor. (Doc. 39-6). The act of forgery consists of intentionally creating or altering a document, with the purpose of having the forgery interpreted as an authentic document. Therefore, the very act of forging a document is the manifestation of the forger's fraudulent and deceptive intent.[11]

Plaintiffs point to *Key Equipment Finance, Inc. v. LaRose (In re LaRose)*, 2008 WL 5636385 (Bankr. M.D. Fla. Oct. 14, 2008), for support of their position that the act of forgery itself evinces the Debtor's intent to deceive. In *LaRose*, the Debtor applied for a business loan,

---

[9] *Field v. Mans*, 516 U.S. 59, 69 (1995).

[10] *Fuller v. Johannessen* (*In re Johannessen*), 76 F.3d 347, 350 (11th Cir. 1996).

[11] *See City Federal Savings Bank v. Seaborne* (*Matter of Seaborne*), 106 B.R. 711, 714 (Bankr. M.D. Fla. 1989) (Debtor presumed to intend the natural consequences of his acts).

7

knowing that the creditor would require personal guarantees from the shareholders.[12] Rather than passing the guarantees on to the shareholders for execution, the Debtor forged the signatures of these individuals.[13] The corporation defaulted on the note, and a dischargeability adversary proceeding followed the Debtor's bankruptcy petition.[14] The Bankruptcy Court held that the Debtor possessed the requisite fraudulent intent in executing the forgeries, as he knew that personal guarantees were required by the creditor to extend the credit, and was also aware that the shareholders were not willing to guarantee the loan.[15] Likewise, when the Debtor in this proceeding applied for credit with both Monsanto and Helena, as "Joseph C. Chapman," he was aware that approval of these respective credit requests hinged on the credit of Joseph C. Chapman supporting the transactions. (Doc. 39-1). The Debtor also knew that Joseph C. Chapman was unwilling to guarantee these transactions, as he was about to retire. (Doc. 39-7 at 15). Thus, the Debtor's intent in this matter is indistinguishable from that of the debtor in *LaRose*.

The Debtor raises one factual conflict that he contends disproves his intent to deceive. Namely, the Debtor contends that the plan to forge the Helena promissory notes was conceived and suggested by Helena's agent, Matt Calame. (Doc. 37) (Doc. 39-7 at 15-16). This factual allegation by the Debtor does not constitute a material factual dispute, thereby depriving the Plaintiffs of a judgment as a matter of law, for several significant reasons. First, it is undisputed that Calame had no authority to extend the Debtor credit from either Helena or Monsanto. (Doc. 39-7 at 21) (Doc. 39-1) (Doc. 39-4) (Doc. 39-2). Thus, even if Calame initiated the forgery

---

[12] *Key Equipment Finance, Inc. v. LaRose (In re LaRose)*, 2008 WL 5636385, *1 (Bankr. M.D. Fla. Oct. 14, 2008).

[13] *Id.* at *2-3.

[14] *Id.* at *2.

[15] *Id.* at *4.

8

scheme, the forgery would still have to deceive Calame's superiors in Collierville, Tennessee, namely Gary Yochum, to be effective. Thus, Calame's alleged involvement in the scheme does not negate the Debtor's fraudulent intent. Second, this factual dispute is immaterial, as it wholly ignores that the Debtor's own forgery of the Helena Extended/Future Terms Request and the Monsanto Loan Agreement initiated the extensions of credit approximately six months before Calame allegedly instigated the forgery plot. Therefore, even if Calame suggested the Debtor forge his father's name on the promissory notes, it does not negate the Debtor's fraudulent intent that predated this suggestion, which is part of the same transaction. Lastly, the Debtor's allegation of Calame's participation in the fraud is immaterial to the Monsanto credit, as no allegation has been made that Calame suggested the Debtor forge any Monsanto credit document. For these reasons, the allegation of Calame's collusion in the forgery scheme, raised solely by the Debtor's testimony is not material to a finding of his intent to deceive. This disputed issue of fact does not preclude a judgment as a matter of law in the Plaintiffs' favor.

### B. Plaintiffs' Justifiable Reliance.

In order to succeed on their claim for nondischargeability, Plaintiffs must prove that they justifiably relied on Debtor's misrepresentations in extending the credit at issue.[16] Justifiable reliance is a less stringent standard than reasonable reliance.[17] In the absence of an "obvious reason" for investigation, the justifiable reliance standard imposes on a creditor no independent duty to investigate the veracity of the Debtor's representations.[18] Under this standard, "the creditor's reliance will likely be justified if there is nothing on the face of the representation that

---

[16] *City Bank & Trust Co. v. Vann* (*In re Vann*), 67 F.3d 277, 280 (11th Cir. 1995)

[17] *Id.*

[18] *Compass Bank v. Meyer (In re Meyer)*, 296 B.R. 849 (Bankr. N.D. Ala. 2003).

9

would lead the creditor to believe that the representation is false, or if the creditor does not have actual knowledge from which he should realize the representation is false at the time it is made."[19]

In this case, both Helena and Monsanto claim that nothing about the forged credit documents appeared out of the ordinary to the individuals relying on these documents. (Doc. 39-2) (Doc. 39-4). Debtor has never argued that Monsanto's reliance was unjustified. However, in an effort to rebut this evidentiary showing, and to create a genuine issue of material fact, the Debtor points to two factual allegations that he claims prevents Helena from relying on the various forged documents. First, Debtor advances a disputed factual allegation that Helena cannot justifiably rely on the forged promissory notes, because its agent, Matt Calame had knowledge of the forgeries that should be imputed to Plaintiffs. Second, Debtor claims that Helena should not be allowed to justifiably rely on a document that its own office clerk, Andrea Dowling, was negligent in notarizing the promissory notes.

### 1. *Constructive Notice of Fraud.*

The Debtor argues that his allegation that Helena's agent, Matt Calame, had knowledge of and participated in the forgery is sufficient to deny Plaintiffs' summary judgment, as he claims it undercuts Helena's justifiable reliance. Calame denies that he had knowledge of the Debtor's forgeries. (Doc. 39-1). For summary judgment purposes, the Court will take as true Debtor's allegation. Even so, Alabama law would not impute Calame's knowledge of the Debtor's forgery to either Helena or Monsanto.

Typically, facts made known to an agent while acting within the line and scope of his agency are imputed to the principal.[20] However, "Where the facts do not warrant an expectation

---
[19] *Id.* at 862.

that the agent will make a disclosure to the principal, the justification for the rule does not arise and the rule does not apply."[21] The facts of this case do not indicate that Calame would have disclosed his knowledge of the Debtor's forgery to his superior at Helena, Gary Yochum. The Debtor contends that it was Calame who suggested he forge his father's name on the promissory notes. To reveal this fact to his superior would expose Calame to possible termination or criminal culpability. The instinct of human self-preservation alone would indicate that Calame would not disclose this information and voluntarily subject himself to discipline. Similarly, when the fact sought to be imputed to a principal concerns the agent's very participation in a fraudulent act, the fact cannot legally be imputed to the principal as a matter of law.[22] Any knowledge that Calame possessed of the Debtor's forgery cannot be imputed to either Helena or Monsanto as a matter of law, and Calame's alleged participation in the fraud has no effect on the justifiable nature of Helena's reliance.

The standard that the Plaintiffs must meet is that of justifiable reliance. Even if Plaintiffs were charged with constructive notice of Debtor's fraud, the Debtor has failed to show how such constructive notice would give rise to a duty to investigate the authenticity of the signature appearing on the Helena promissory notes. It is not altogether clear that constructive notice of these facts would be sufficient to negate principal's justifiable reliance.[23] Moreover, even if

---

[20] *Bynon v. Citizen's Bank of Carbon Hill*, 130 So. 391, 393 (Ala. 1930).

[21] *National Union Fire Ins. Co. v. Lomax Johnson Ins. Agency, Inc.*, 496 So.2d 737, 739 (Ala. 1986).

[22] *See Commonwealth Life Ins. Co. v. Wilkinson*, 129 So. 300 (Ala. App. 1930).

[23] *See Commonwealth Land Title Ins. Co. v. Homer (In re Homer)*, 168 B.R. 790 (Bankr. N.D. Ga. 1994) (constructive notice of documents contained in public record not sufficient to negate creditor's justifiable reliance or give rise to a duty to investigate).

11

Plaintiffs were chargeable with knowledge of the Debtor's forgery of the Helena promissory notes dated June 15, 2009, it would not affect Plaintiffs' justifiable reliance on forged documents that predated Debtor's forgery of the Helena promissory notes. Testimony indicated that Helena's agricultural transactions were often not documented with promissory notes until after the credit approval decision had been made. (Doc. 39-4). If constructive knowledge of the forged nature of the promissory notes could be imputed to Helena, such would not negate its justifiable reliance on the forged January 15, 2009 Extended/Future Terms Request, which authorized the credit that would ultimately be evidenced by the forged promissory notes. Calame's alleged knowledge of Debtor's forgery cannot, as a matter of law, be imputed to either Plaintiff. Thus, any apparent factual dispute regarding Calame's participation in the fraud is immaterial to the Court's consideration of Plaintiffs' justifiable reliance.

2. *The Negligent Notary*.

Debtor argues that Helena's justifiable reliance is also negated by its employee Andrea Dowland's negligence in notarizing the promissory notes. The parties disagree on whether the notes were already signed when they were presented for a notary attestation. (Doc. 39-8) (Doc. 39-7 at 23). However, there is agreement that Dowland should have, but did not, ask the Debtor for identification prior to notarizing the promissory notes. Debtor argues that in notarizing these documents Helena undertook an independent duty to verify the authenticity of the signatures on the instruments. As a result, the Debtor concludes, Helena cannot justifiably rely on the signatures on the promissory notes, as it should have discovered the forgery. Debtor cites no authority to support this argument. That Helena did not detect and prevent the Debtor from submitting a forgery is no cognizable legal defense. Debtor cannot now exploit Dowland's negligence to excuse his own intentional fraudulent acts.

12

Case 12-80002-JAC   Doc 43   Filed 10/11/12   Entered 10/11/12 09:04:54   Desc Main
Document      Page 12 of 14

Furthermore, the fact that the promissory notes contained a notary seal when they reached Helena's Collierville, Tennessee corporate headquarters only serves to bolster Helena's claim that it justifiably relied on these documents. Assuming a forged document presents no "red flags" that would be revealed by a cursory review, a creditor is allowed to justifiably rely on the forgery.[24] According to the undisputed testimony of Gary Yochum, no irregularities were apparent in reviewing these instruments. (Doc. 39-4). That these notes contained a notary seal (regardless of the circumstances under which the seal was affixed) buttresses the apparent validity of the notes' appearances, as a notarized document carries with it an evidentiary presumption of authenticity.[25] Debtor proffers no evidence that Yochum possessed actual knowledge of irregularities in Dowland's notorial act and the Debtor has not pointed to any irregularities in the appearance of the notes. Thus, as the notary seal raises the evidentiary presumption that the notes were what they purported to be – a legal obligation of Joseph C. Chapman – Helena justified in relying on these documents in extending credit to Debtor.

## *CONCLUSION*

The undisputed material facts indicate that Debtor forged his father's signature on various credit applications submitted to both Plaintiffs and promissory notes submitted to Plaintiff Helena. Likewise, these signatures were made by the Debtor without his father's knowledge or consent. Plaintiffs' undisputed testimony indicated that both Helena and Monsanto relied on the fact that Joseph C. Chapman's credit supported these extensions of credit when these loans were funded. As a matter of law, the Debtor's allegation of Helena's agents' collusion and negligent

---

[24] *Lyndon Property Ins. Co. v. Adams* (*In re Adams*), 312 B.R. 576, 585 (Bankr. M.D.N.C. 2004).

[25] *Central Bank of the South v. Densmore*, 475 So.2d 842, 845 (Ala. 1985) (notary seal raises an evidentiary presumption of authenticity).

13

notarization of the Helena promissory notes have no bearing on Plaintiffs' justifiable reliance and are immaterial to the resolution of the issues under submission. Plaintiffs' Third Motion for Summary Judgment (Doc. 39) is due to be granted in full, and Debtor's Motion for Summary Judgment (Doc. 37) is due to be denied. Helena's claim in the amount of $317,664.06, and Monsanto's claim in the amount of $33,921.15 are both hereby declared nondischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A).

A separate order will be entered consistent with this opinion.

Dated: October 11, 2012

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge